The UNITED STATES, Appellant,

v.

TEXAS INSTRUMENTS
INCORPORATED,
Appellee.

Appeal No. 79–33.

United States Court of Customs and
Patent Appeals.

April 17, 1980.

Alice Daniel, Asst. Atty. Gen., Washington, D. C., David M. Cohen, Director, Commercial Litigation Branch, Sheila N. Ziff, New York City, attorney of record, for appellant.

Frederick L. Ikenson, Washington, D. C., for appellee.

Henry C. Ikenberry and Gary N. Horlick, Steptoe & Johnson, Washington, D. C., for Talley Industries, amicus curiae.

James F. Davis, John F. Bruce and Frederick H. Graefe, Howrey & Simon, Washington, D. C., for Timex Corp., amicus curiae.

Ive Arlington Swan, Atty. Gen. of the Virgin Islands and William L. Blum, Legal Counsel to the Virgin Islands Dept. of Commerce, Charlotte Amalie, St. Thomas, V. I., for Government of the Virgin Islands, amicus curiae.

Eugene A. Ludwig, Covington & Burling, Washington, D. C., attorney of record for American Watch Ass'n, amicus curiae.

Louis Schneider and Herbert Peter Larsen, Freeman, Meade, Wasserman & Schneider, New York City, for General Elec. Co., amicus curiae.

Before MARKEY, Chief Judge, RICH, BALDWIN and MILLER, Judges, and FORD,* Judge.

MARKEY, Chief Judge.

The Government appeals from the judgment of the Customs Court, *Texas Instruments, Inc. v. United States*, 82 Cust.Ct. 272, C.D. 4810, 475 F.Supp. 1183 (1979), sustaining Texas Instruments' classification protest relating to imported integrated circuit devices used as components in solid state digital watches.[1] We affirm.

*Background*

The imported articles, entered from El Salvador in August 1976, are integrated circuit devices, each of which is affixed to a

---

* The Honorable Morgan Ford, Judge, United States Customs Court, sitting by designation.

1. Briefs *amicus curiae* were filed by American Watch Association, General Electric Company, Government of the Virgin Islands, Talley Industries, and Timex Corporation.

lead frame and encapsulated in molded plastic material shaped to facilitate addition of other components required to complete a digital watch module, i. e., crystal, capacitor, batteries and display.

The Customs Service classified the imported articles under TSUS item 720.75 [2] as assemblies and subassemblies for watch movements. Texas Instruments claimed classification under TSUS item 687.60.[3] The Government asserted an alternate classification under TSUS item 720.86 [4] as assemblies and subassemblies for clock movements.

Judge Nils A. Boe held: (1) the legislative history of TSUS item 720.75 does not evidence a congressional intent to include every device capable of measuring time within the meaning of "watch movement"; (2) "watch movement" refers to a mechanism possessing moving parts to which or from which motion is transferred; (3) the molecular vibration within the quartz crystal of an electronic watch module does not satisfy that motion requirement; (4) the imported articles do not bear an essential resemblance to watch movements, and are specifically provided for under TSUS item 687.60; (5) the imported articles are not more than integrated circuits; and (6) the imported articles are not classifiable as

"clock movements" under TSUS item 720.-86, the sole distinction between clock and watch movements being size.

*Issue*

■ The dispositive issue is whether the Customs Court erred in holding the articles properly classified under TSUS item 687.60 as transistor and other related electronic crystal components rather than as subassemblies for watch or clock movements.

OPINION

The Government argues the Customs Court erred because: (1) legislative history shows a congressional intent to include electronic movements within the term "watch movements"; (2) the quartz crystal incorporated into the imported articles after importation provides movement; (3) the imported articles bear an essential resemblance to watch movement subassemblies in existence when the TSUS was enacted; (4) the articles are more than integrated circuits; and (5) if the articles are not watch movements, they are clock movements.

(1) Legislative History

The Government cites portions of the *Tariff Classification Study* and the *Con-*

---

**2.** Assemblies and subassemblies for watch movements consisting of two or more parts or pieces fastened or joined together:

    \*    \*    \*    \*    \*    \*    \*

720.75   Other assemblies and sub-
          assemblies . . . . . . . . . . 4.5¢ for each
                    jewel (if any)
                    + the column 1
                    rate specified
                    in item 720.65
                    for bottom or
                    pillar plates or
                    their equivalent
                    therein . . .
                    but the total
                    duty on the
                    assembly or
                    subassembly
                    shall not . . .
                    be less than
                    22.5% ad
                    val. . . .

**3.** Electronic tubes (except X-ray tubes): photocells; transistors and other related electronic crystal components; mounted piezoelectric crystals; all the foregoing and parts thereof:

    \*    \*    \*    \*    \*    \*    \*

687.60   Other . . . . . . . . . . . . . . . . . . . . . 6 % ad val.

**4.** Assemblies and subassemblies for clock movements, consisting of two or more parts or pieces fastened or joined together:

    \*    \*    \*    \*    \*    \*    \*

        Other assemblies and subassemblies:

    \*    \*    \*    \*    \*    \*    \*

720.86   For other movements . . 16% ad val. +
                    6.25¢ for each
                    jewel (if any) +
                    0.75¢ for each
                    other piece or
                    part.

*gressional Record* that indicate a congressional intent that electronically regulated movements be classified with conventional movements. Those citations do not, however, persuasively show that a solid state module having no moving parts was intended by Congress to be included within the provision for "watch movements."[5] Accordingly, the Customs Court properly determined the meaning of the term "watch movements" by reference to texts and dictionaries in use at the time the TSUS was enacted, the common understanding of the term in the horological industry at that time, and the testimony of experts as to what the term meant when the TSUS was enacted. The conclusion of the Customs Court that the term refers to a mechanism incorporating "moving parts to which or from which motion is transferred," 82 Cust.Ct. at 278, 475 F.Supp. at 1187, has not been shown to be erroneous by the Government. We agree with the Customs Court that the term requires a mechanism for the transfer of motion. Indeed, until 1972, every watch sold contained a movement meeting that definition. Electronically regulated watch movements, the subject of much discussion when the TSUS were enacted (and of the legislative history cited by the Government), also have moving parts and thus meet that definition. The Customs Court correctly decided that the articles at issue here, having no mechanism for the transfer of motion, were not "movements" or subassemblies of "movements" within the meaning of that term as it was understood in 1962.

### (2) Quartz Crystal Motion

The Government argues that even if motion is required by the definition of watch movement, that requirement is satisfied by the vibration of the quartz crystal later incorporated into the imported articles. We do not accept that contention. The magnitude of the motion within the crystal is roughly one angstrom (one ten-billionth of a meter); the motion is essentially molecular vibration; and the motion does not transmit mechanical energy or transfer motion to or from any other part.

### (3) Essential Resemblance

The Government argues that the imported articles bear an essential resemblance to subassemblies for watch movements in existence when the TSUS were enacted and thus should be classified with them. That argument is supported by a functional analysis: because the imported articles and prior subassemblies are used to keep time and meet certain dimensional requirements, they should be classified together.

The required essential resemblance is to those characteristics established by the TSUS as the criteria of classification. *Davies Turner & Co. v. United States*, 45 CCPA 39, 41–42, C.A.D. 669 (1957). The criteria established by the TSUS for classification as a watch movement are: (1) a timepiece movement, (2) less than 1.77 inches wide and 0.5 inch thick. Though the dimensional requirements are met by the imported article, it does not bear an essential resemblance to a timepiece movement because the imported article is not and does not contain a movement. We agree with the Customs Court that the articles are more specifically provided for as transistors and other related electronic crystal components.

### (4) "More Than" Integrated Circuits

Arguing that the imported articles are more than integrated circuits, the Government says classification in a TSUS item for integrated circuits is improper because: (1) the encapsulation material serves as a housing for other components; (2) the lead frame serves as the device's substrate; and (3) not all the usable terminals are connected to external leads.

■ "Only the most general of rules can be ascertained from the previous decisions

---

**5.** Congress rejected an attempt to amend the relevant TSUS items in 1975 and 1976 to include components of solid state watches under the TSUS provisions for watches. H.R. 10176, 94th Cong., 1st Sess. (1975); H.R. 14600, 94th Cong., 2d Sess. (1976).

dealing with the 'more than' doctrine, and it appears that each case must in the first analysis be determined on its own facts." *E. Green & Son (New York), Inc. v. United States,* 59 CCPA 31, 34, C.A.D. 1032, 450 F.2d 1396, 1398 (1971). This court will not reverse on questions of fact unless the findings are unsupported by substantial evidence or are clearly contrary to the weight of the evidence. *Pollard Bearings Corp. v. United States,* 62 CCPA 61, 64, C.A.D. 1146, 511 F.2d 568, 571 (1975); *United States v. F. W. Myers & Co.,* 45 CCPA 48, 52, C.A.D. 671 (1958).

The Customs Court's finding that the articles are not more than integrated circuits is fully supported by the evidence. We agree with the Customs Court that the features the Government points to are subordinate to the articles' use as integrated circuits.

### (5) Clock Movement

The Government argues that if the articles are not classifiable as watch movements they are classifiable as "clock movements or mechanisms" under TSUS item 720.86, because Schedule 7, Part 2, Subpart E, Headnote 2(c), says for the purpose of Subpart E: "the term 'clock movements' means any movement or mechanism, other than 'watch movements' as defined in headnote 2(b), above, intended or suitable for measuring time." That language, says the Government, requires that any timekeeping device not meeting the dimensional and physical requirements of "watch movement" be classified as a "clock movement or mechanism."

That argument turns on the meaning of "mechanism" at the time the TSUS were enacted. That meaning is of a breadth insufficient to encompass a solid state module having no moving parts. *Webster's Third New International Dictionary* (1961) defines mechanism as "a piece of machinery: a structure of working parts functioning together to produce an effect," with machine defined as "[a]ny device consisting of two or more . . . parts, which . .

may serve to transmit and modify force and motion . . . ." That that meaning has long been accepted is evidenced by *Lockwood's Dictionary of Mechanical Engineering Terms* (1913), defining mechanism as "an assemblage of parts . . . which embraces the essential principles on which the machine is constructed," and "machine" "an assemblage of parts . . . by which motion and force are transmitted."

The integrated circuit before us is not a subassembly of a mechanism for the same reason it is not a subassembly of a movement: there is simply no physical movement or motion generated in or by the circuit.

### SUMMARY

The judgment of the Customs Court, that encapsulated integrated circuits, used in solid state watches, are properly classified as transistors and other related electronic crystal components rather than subassemblies for watch movements, is *affirmed.*